UNITED STATES of America

v.

Wesley Joseph (Joe) WINGO.

Crim. A. No. 1:89–CV–0078–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 5, 1989.

Gerrilyn G. Brill, Asst. U.S. Atty., Atlanta, Ga., for plaintiff.

Alan J. Baverman, Gary G. Grindler, Atlanta, Ga., for defendant.

## ORDER

FORRESTER, District Judge.

This criminal action is now before the court on defendant Wingo's written objections to the Order, Report and Recommendation of Magistrate Strother denying defendant's motion to dismiss the indictment for governmental misconduct; and for disclosure of grand jury testimony and other information; and motion to dismiss and to strike.

### I. STATEMENT OF FACTS

Wingo is indicted in one count with a violation of the Hobbs Act, 18 U.S.C. § 1951. The indictment alleges, in relevant part, that defendant Wingo obtained substantial sums of money, which was not due him or his office or position, from Dr. Charles Wood for the purpose of influencing the defendant's conduct in relation to his position as a member of the Board of Trustees of the Hospital Authority of Gwinnett County, Georgia. He is alleged to have obtained such money "under color of official rights."

The defendant moves to strike or dismiss this indictment on the basis that he is a private individual and not a public official within the scope of the Hobbs Act. Further, defendant claims that, as a matter of law, his actions as a member of the Board of Trustees of the Gwinnett County Hospital Authority could not constitute actions "under color of official rights" because members of hospital authorities are not public officials. He also argues that as

applied to the facts in this case, the Hobbs Act is vague, indefinite and ambiguous in violation of his rights under the fifth amendment.

In addition, defendant Wingo filed a motion to dismiss the indictment alleging that the government is prosecuting him in retaliation for his failure to aid investigators in their investigation of the Gwinnett County Government. Defendant bases his allegations of governmental misconduct on statements by agents which were recorded after he was stopped leaving Dr. Wood's office carrying $15,000. The agent stated:

> Wingo was advised that his cooperation was being solicited, however, if he did not feel he wanted to assist the government or could be of no value to the government then the government would proceed against him as it normally would, but the decision was entirely up to him. He was advised that he would be contacted at a later date in order to finalize what his decision would be.

*See* FBI Form 302. Based on these two sentences, defendant Wingo asserts that he was prosecuted solely because of his inability to assist the agents in their investigation and, thus, the indictment should be dismissed as a violation of his due process rights. Moreover, the defendant maintains that if the government agents' statements about his failure to cooperate were presented to the grand jury, then the indictment should be dismissed because it would have improperly influenced the grand jury.

After carefully reviewing the pleadings and evidence on the issues involved, Magistrate Strother recommended that defendant Wingo's motion to dismiss the indictment for governmental misconduct and for disclosure of grand jury testimony and other information and his motion to dismiss and to strike be denied. In accordance with this court's Local Rules 260 and 500, and 28 U.S.C. § 636(b)(1), the defendant filed written objections. Defendant Wingo, based upon the alleged impropriety of the aforementioned statement, now seeks access to grand jury transcripts, an evidentiary hearing on prosecutorial misconduct, and ultimately to have his indictment dismissed.

## II. GOVERNMENTAL MISCONDUCT

### A. *Prosecutorial Vindictiveness.*

The Supreme Court first articulated the concept of prosecutorial vindictiveness in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), where the court held that due process rights are implicated when a sentence is increased on retrial solely because of vindictiveness against the defendant. *See id.* at 725, 89 S.Ct. at 2080. *See also Blackledge v. Perry*, 417 U.S. 21, 28, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974) (holding that the due process protection against judicial vindictiveness also extends to post-trial prosecutorial vindictiveness.) In *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Supreme Court faced for the first time the question of prosecutorial vindictiveness in a pre-trial setting. There, a prosecutor, while engaged in plea bargaining, threatened to increase the charges if the accused, Hayes, insisted on exercising his constitutional right to plead not guilty. In holding that the prosecutor did not violate the due process clause of the fourteenth amendment, the majority did not discuss the issue in terms of vindictiveness, concluding instead that retaliation could not occur in the plea bargaining context: "[I]n the 'give-and-take' of plea bargaining there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Id.* at 363, 98 S.Ct. at 668.

More recently, in *United States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), the Supreme Court reaffirmed and explained its holding in *Bordenkircher*: "This Court in *Bordenkircher* made clear that the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is *insufficient to warrant a presumption* that subsequent changes in the charging decision are unjustified." *Id.* at 382–83, 102 S.Ct. at 2493 (emphasis added). In so doing, the Court opined, "[b]y tolerating and encour-

aging the negotiation of pleas, this Court has accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forego his constitutional right to stand trial." *Id.* at 378, 102 S.Ct. at 2491.

■ With these well-settled principles in mind, this court must now determine whether defendant Wingo has shown that all of the facts and circumstances, when taken together, support a "realistic likelihood of vindictiveness," therefore giving rise to a rebuttable presumption. *See Goodwin,* 457 U.S. at 384, 102 S.Ct. at 2494. Although this court possesses the authority to dismiss an indictment for government misconduct, such dismissal is an "extreme sanction which should be infrequently utilized." *United States v. Sims,* 845 F.2d 1564, 1569 (11th Cir.1988). Dismissal is favored in only the most egregious circumstances. This court does not find such egregious circumstances based upon the statements of the government agents. Since defendant has not alleged facts giving rise to a presumption of prosecutorial vindictiveness, this court concludes that there has been no violation of defendant's right to due process under the fourteenth amendment.

■ This case, like *Bordenkircher,* arises from pre-trial charging decisions. Unlike *Bordenkircher,* however, there is no evidence in this case that could give rise to a claim of actual vindictiveness. Although defendant Wingo asserts that he was not properly chargeable under the Hobbs Act, it is undisputed that the extortion charge was justified by the evidence[1] and that the government was in possession of this evidence when they sought the original indictment. "[A]s long as the prosecutor has probable cause to believe that an accused has committed an offense defined by statute, the decision whether or not to prosecute, and if so, what charge to bring before the grand jury, rests in the prosecutor's discretion." *United States v. Cole,*

755 F.2d 748, 758 (11th Cir.1985) (citing *Bordenkircher* ). Prosecutors legitimately have substantial discretion in the area of criminal enforcement. *See Bordenkircher,* 434 U.S. at 364, 98 S.Ct. at 668; *United States v. Cowan,* 524 F.2d 504, 513 (5th Cir.1975); *Newman v. United States,* 382 F.2d 479, 480 (D.C.Cir.1967) (Burger, J.) ("Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charges shall be made, or whether to dismiss a proceeding once brought."). A charging decision does not impose an improper penalty unless it results solely from the defendant's exercise of a constitutional right, rather than the prosecutor's normal evaluation of the societal interest in prosecution. *See Goodwin,* 457 U.S. at 381–82, 102 S.Ct. at 2492–93.

■ Further, there is no claim that the government's prosecution "was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Bordenkircher,* 434 U.S. at 364, 98 S.Ct. at 668. In fact, the defendant acknowledges that attempts to bargain with potential defendants for cooperation in exchange for leniency are well-recognized, efficient practices. *See* Defendant's Objections to the Report and Recommendation at p. 4. Defendant Wingo, nevertheless, argues that what is presented here is the prosecution of an individual not because of his unwillingness, but rather because of his inability to assist the government in its ongoing investigation of public corruption in Gwinnett County. *See id.* He insists that "charging a willing but unhelpful defendant because he *cannot* render further assistance to authorities implicates the rules prohibiting prosecutorial vindictiveness." *Id.* Such is simply not the case. What defendant Wingo claims that the prosecutor owes him is mercy and not justice. The discretionary practices attributed to these government agents will

---

1. Defendant Wingo was stopped by the FBI as he exited Dr. Wood's office with $15,000 of Wood's money. This transaction was the basis of the government's indictment under the Hobbs Act for extortion. *See* Criminal Indictment.

not give rise to a presumption of vindictiveness. The Eleventh Circuit has said:

> We are not unmindful of situations when agents of the government make promises or representations to induce actual or potential defendants to cooperate or provide information concerning on-going investigations. Neither are we unaware of the strategy used by defendants or targets of investigations to make deals to their advantage.

*United States v. Kettering*, 861 F.2d 675, 678 n. 2 (11th Cir.1988). This court finds that the government's attempt to induce "cooperation" closely resembles the activity sanctioned in *Bordenkircher*, particularly because defendant Wingo was free to accept or reject the government's offer and the attempt to obtain "cooperation," like plea bargaining, involves a "mutuality of advantage" for defendants and prosecutors. *See Bordenkircher*, 434 U.S. at 363, 98 S.Ct. at 668. These facts do not give rise to a presumption of prosecutorial vindictiveness. Accordingly, this court concludes that the course of conduct employed by the government, which presented the defendant with the alternatives of cooperating with the investigation or facing charges on which he was plainly subject to prosecution, did not violate the due process clause of the fourteenth amendment. Defendant Wingo's request for an evidentiary hearing on prosecutorial misconduct, and ultimately to have his indictment dismissed is, therefore, DENIED.

### B. *Grand Jury Records.*

■ Defendant Wingo seeks to obtain discovery of all matters pertaining to the charging decision of the government in order to determine whether the grand jury's decision to indict was substantially influenced by any evidence of "non-cooperation." *See* Defendant's Objections to the Report and Recommendation at p. 5. Defendant contends that the government may have poisoned the grand jury process by presenting evidence of defendant's inability to assist the government in its ongoing investigation of public corruption in Gwinnett County. This court finds that defendant Wingo's unsubstantiated allegations of grand jury manipulation do not satisfy the "particularized need" standard so as to justify infringement of grand jury materials.

■ The controlling standard for this court's inquiry is a straightforward one:

> Parties seeking grand jury transcripts under Rule 6(e) must show that the matter they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only materials so needed. Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations.

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979). "In order to justify lifting the secrecy that normally surrounds the grand jury proceedings, courts must find a 'particularized need' for the disclosure that outweighs the benefits of maintaining the secrecy." *In re Subpoena to Testify before Grand Jury*, 864 F.2d 1559, 1562 (11th Cir.1989). The decision to disclose grand jury proceedings is a matter within the district court's discretion. *United States v. Benton*, 637 F.2d 1052, 1059 (5th Cir.1981). In *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 445, 103 S.Ct. 3133, 3149, 77 L.Ed.2d 743 (1983), the Supreme Court opined that assertions that the grand jury materials sought are rationally related to alleged claims are insufficient to constitute particularized need. Moreover, this circuit has observed that "[p]articularized need is not shown by a general allegation that grand jury materials are necessary for the preparation of a motion to dismiss." *United States v. Burke*, 856 F.2d 1492, 1496 (11th Cir.1988); *see also United States v. Cole*, 755 F.2d 748, 759 (11th Cir.1985) (unsubstantiated allegations do not satisfy particularized need standard).

Under these well-settled principles, defendant Wingo has the burden of showing that the requested materials covered a particularized need, which could be assuaged by access to specific grand jury materials,

without doing disproportionate harm to the salutary purpose of secrecy embodied in the grand jury process. This he has not done. In addition to making no attempt to limit or particularize his broad request for all grand jury records, defendant Wingo has failed to show this court how disclosure would assist him in establishing governmental misconduct before the indicting jury. Defendant merely asserts that "he is entitled ... to obtain discovery of matters concerning the charging decision of the U.S. Attorney's Office ... [to determine] how, and to what extent, Mr. Wingo's inability to assist the government was presented to the grand jury." Defendant's Objection to the Report and Recommendation at p. 5. Such general and unsubstantiated allegations will not justify a district court's order of the production of grand jury documents. Accordingly, defendant Wingo's motion to inspect the grand jury records and request for an evidentiary hearing on this matter is DENIED.

In the instant case, defendant Wingo has failed to show, by affidavit or otherwise, how the government's alleged comment on his failure to cooperate prejudiced the grand jury. Thus, even assuming misconduct,[2] the defendant's failure to show a significant infringement on the ability of the grand jury to exercise its independent judgment in the charging decision necessitates a denial of his motion to dismiss. *See generally Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). "The relevant inquiry focuses on the impact of the prosecutor's misconduct on the grand jury's impartiality, not on the degree of the prosecutor's culpability." *United States v. De Rosa*, 783 F.2d 1401, 1405 (9th Cir.1986). In sum, this court need not consider the prejudicial effect of the alleged governmental misconduct, because the defendant has failed to raise a substantial question, much less a grave doubt, as to whether the evidence of "non-cooperation" had a substantial effect on the grand jury's evaluation of the testimony or its decision to indict. Accordingly, defendant Wingo's motion to dismiss for governmental misconduct is DENIED.

## III. MOTION TO STRIKE OR DISMISS.

Defendant Wingo next moves to dismiss or strike his indictment on the basis that he, as a board member of the Gwinnett County Hospital Authority, is not a public official within the scope of the Hobbs Act, 18 U.S.C. § 1951. *See* Defendant's Objections to the Report and Recommendation at p. 7. The defendant further alleges that the Hobbs Act, as applied to the allegations of this case are vague, uncertain and ambiguous to the point of providing inadequate notice in violation of defendant's fifth amendment right to due process of law. This court concludes that defendant's contentions are without merit.

### A. *Extension of Hobbs Act to Private Individuals.*

 Defendant Wingo is charged under the Hobbs Act with extorting and attempting to extort substantial sums of money from Dr. Charles Wood "under color of official right." The Hobbs Act defines the term extortion as meaning: "The obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear, or under color of official right."

The defendant Wingo appears to contend that he cannot properly be prosecuted because he is not a public official acting under color of official right within the meaning of the Hobbs Act because he is a private individual. This court disagrees. The short answer is that he was a member of the Board of Trustees of the Hospital Authority and to the extent that it is a public entity, he is a public official by virtue of his position.

 Further, although extortion under color of official right presupposes some public trust position, the public official need not actually have the authority that

---

**2.** Most instances of prosecutorial misconduct involve the knowing use of perjured testimony and entrapment of the defendant by law enforcement officers. Defendant Wingo cites no case which draws the outer limits beyond which the government cannot go in discussing the cooperation of a prospective defendant before a grand jury, and the court has found none.

he allegedly misused. This element is satisfied if the defendant exploited a victim's reasonable belief that the official had such power. *See United States v. Mazzei*, 521 F.2d 639, 643 (3d Cir.1975) (en banc). In the case of *United States v. Finley*, 705 F.Supp. 1272 (N.D.Ill.1988), the court reviewed the history of the Hobbs Act and determined that a private individual may be prosecuted under the "official right" language of the statute if "he is reasonably perceived by his victim as exerting such control." *Finley*, 705 F.Supp. at 1282–83. Although some recorded cases interpret the Hobbs Act to exclude private conduct, *see, e.g., United States v. Gonzales*, 620 F.Supp. 1143, 1146–47 (N.D.Ill.1985); *United States v. Freedman*, 562 F.Supp. 1378, 1388 (N.D.Ill.1983), this court finds the legislative history on this point sufficiently broad to embrace such conduct. Congressman Hobbs, the bill's sponsor, defined "under color of official right" as *pretending* to be a public official. *See* 89 Cong.Rec. 3229 (1943) (emphasis added). Moreover, Congressman Simmons, in trying to explain the term to a colleague, said the language means money obtained by someone *claiming* to be a public officer. *See id.* (emphasis added). In sum, this court concludes that the Hobbs Act case law and the legislative history of the Act clearly permit a "color of official right" prosecution of even private individuals who extort money upon proper showing that his victim reasonably believed him to have such control or power.

## B. *Notice under Hobbs Act.*

 Defendant Wingo next argues that because hospital authorities are similar, in many respects, to private entities, Wingo was given insufficient notice that he would be subject to prosecution under the Hobbs Act. Defendant's contentions are without merit. This court finds that the hospital authority is in fact a public entity and that the defendant Wingo had sufficient notice that he was a public official for the purposes of the Hobbs Act.

Under Georgia law, hospital authorities are created by state law, *see* O.C.G.A. § 31–7–72(a), given the authority to exercise essential government functions, *see* O.C.G.A. § 31–7–75, and its members are appointed by the Gwinnett County Board of Commissioners, *see* O.C.G.A. § 31–7–72(a) and (b), and are considered public officers of the state subject to the provisions of the Georgia Constitution. *See Richmond County Hosp. Auth. v. Richmond County*, 255 Ga. 183, 189, 336 S.E.2d 562 (1985) ("hospital authority members are, of course, public officers, and as such are further restrained by the provisions of Art. I, Sec. II, par. I, Const. of Ga. of 1983 …."). This court concludes that the aforementioned facts are sufficient to "give a person of ordinary intelligence," *United States v. Williams*, 621 F.2d 123, 125 (5th Cir.1980), more than adequate notice of the public nature of hospital authorities.[3] Accordingly, this court concludes that defendant Wingo had sufficient notice that he would be subject to prosecution under the Hobbs Act.

In order to defeat this conclusion, defendant Wingo argues that the hospital authority, though created by state law, is in fact no more of a public entity, and to some extent less of a public entity, than a banking authority which is also created by state law and subject to state regulation. This court is not persuaded by the defendant's comparison between regulated private entities and the hospital authority. Although defendant Wingo has pointed to several individual attributes that hospital authorities have in common with non-public entities, such as banks, he fails to identify a

---

**3.** In further support of its conclusion that a board member of a hospital authority is fairly on notice that he is a public official for the purposes of the Hobbs Act, this court notes that in § 1983 actions hospital authorities have long been considered public entities fully capable of operating "under color of state law." *See, e.g., Wofford v. Glynn Brunswick Memorial Hosp.*, 864 F.2d 117, 118 (11th Cir.1989) ("because the hospital is a public hospital authority created under O.C.G.A. § 31–7–1, *et seq.*, its actions constitute state acts within the meaning of § 1983"); *Richards v. Emanuel County Hosp. Authority*, 603 F.Supp. 81, 83 (S.D.Ga.1984) (Bowen, J.) ("the acts of the county hospital authority are state acts") (citing O.C.G.A. § 31–7–1 to § 31–7–208).

private entity which has all of the attributes of a hospital authority. Absent such a showing, this court is unwilling to conclude that because hospital authorities are similar, in some respects, to private entities, defendant Wingo was given insufficient notice that he would be subject to prosecution under the Hobbs Act.

## IV. CONCLUSION.

In summary, defendant Wingo's motion to dismiss the indictment for governmental misconduct and for disclosure of grand jury testimony and other information is DENIED. Defendant's motion to dismiss and to strike on the basis that he, as a member of the Gwinnett County Hospital Authority, is not a public official within the meaning of the Hobbs Act, is likewise DENIED.

SO ORDERED.