Argued and submitted May 26, 1999, affirmed September 5, 2001

# STATE OF OREGON,
*Respondent,*

*v.*

# COLLEEN LOIS KADDERLY,
*Appellant.*

970746181; A101010

31 P3d 1108

Andrew S. Chilton, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

## LINDER, J.

Defendant appeals her conviction of one count of prostitution, ORS 167.007, challenging the trial court's denial of her motion to dismiss on vindictive and selective prosecution grounds. The sole issue presented is whether a prosecutor's decision not to bring charges against persons who testify truthfully against other offenders, while charging those who invoke their Fifth Amendment privilege and decline to so cooperate, amounts to vindictive or selective prosecution as to the persons who are charged. We conclude that it does not and, consequently, we affirm.

The relevant facts are not disputed. During a police investigation of certain escort services that were suspected fronts for prostitution, defendant was videotaped while engaging in an alleged act of prostitution at a Portland motel. Sometime later, two Portland police officers served her with a subpoena to appear and testify before a grand jury. The officers told defendant that, although neither she nor the other women who worked for the escort service were the targets of the investigation or the grand jury, she would be expected to testify truthfully about her dealings with the operators of the escort service. To dissuade defendant from testifying falsely, the police warned her that they had a videotape of her engaging in an act of prostitution. The police further told defendant that they would appreciate her cooperation but that they were not promising that she would not be prosecuted if she cooperated and testified before the grand jury. That charging decision, the police advised, would be made by the prosecutor.

Defendant appeared before the grand jury pursuant to the subpoena. When she was asked if she knew one of the operators of the escort service, she refused to answer, citing her Fifth Amendment right not to incriminate herself. She was not asked any additional questions. Later, defendant was indicted for prostitution. Of the employees who worked for the prostitution business and who were subpoenaed to the grand jury, defendant was the only one who refused to testify. She also was the only employee who was indicted for prostitution.

At the hearing on defendant's motion to dismiss, the prosecutor—who had presented witnesses to the grand jury investigating the escort services and who later obtained the indictment against defendant—testified that he would not have pursued the charge against defendant if she had testified truthfully before the grand jury instead of invoking her Fifth Amendment privilege. The prosecutor added that he had no personal animosity toward defendant. His intent was to pursue charges against those whom the state had probable cause to proceed, whose prostitution-related conduct had occurred within the statute of limitations, and who declined to testify truthfully against the organizers of the prostitution ring. The prosecutor explained:

> "Those who cooperated, testified candidly, about their knowledge of [the operators of the prostitution ring], they were not charged—in effect, a tradeoff in order to prosecute the perpetrators of a class C felony in an organized criminal operation and not prosecuting those who committed a lesser offense, a class A misdemeanor."

The prosecutor viewed the employees' testimony as "critical" to a successful prosecution of the operators of the prostitution ring because it was "essential in proving the knowing elements" of the charge against those individuals. He thus described witnesses as the "bedrock" of the state's case-in-chief against the operators. The prosecutor did not tell the employees in advance of their grand jury appearance that they would not be prosecuted if they testified truthfully because he feared that the defense would use any such promise to impeach them at trial.

Before trial on defendant's prostitution charge, defendant moved to dismiss the indictment, claiming vindictive prosecution. In argument on the motion, defendant expanded her grounds to include a selective prosecution claim. After an evidentiary hearing, the trial court denied defendant's motion, concluding that she had not shown that the state's decision to prosecute her was "motivated by a discriminatory purpose." Following a stipulated facts trial, defendant was convicted of prostitution.

On appeal, the parties renew the arguments they made below. They do not dispute the facts relating to the

prosecutor's reasons for bringing the charge against defendant; they disagree only as to the legal significance of those reasons. Thus, the issue presents us with a question of law for which our review is plenary. *See State v. Folsom*, 125 Or App 29, 32, 865 P2d 372 (1993), *rev den* 319 Or 625 (1994). Defendant argues, in essence, that because the prosecutor's explanation of the charging decision was that defendant would not have been prosecuted if she had waived her Fifth Amendment testimonial privilege before the grand jury, the charge necessarily was in response to her assertion of a constitutionally protected right. According to defendant, her prosecution therefore was vindictively motivated and unconstitutionally selective. The state counters by asserting that defendant was not charged due to animosity based on her assertion of her Fifth Amendment privilege; rather, other individuals were given leniency as a reward for their cooperation in prosecuting other offenders. In the state's view, such a motive is neither vindictive nor unconstitutionally selective. As we explain below, we agree with the state.

■ Defendant's vindictive and selective prosecution claims, as invoked in this case, are predicated on federal constitutional principles.[1] "Vindictive prosecution," which is rooted in the Due Process Clause, is premised on the notion that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort[.]" *Bordenkircher v. Hayes*, 434 US 357, 363, 98 S Ct 663, 54 L Ed 2d 604 (1978). Thus, a criminal charge is subject to dismissal if the state brought the charge in retaliation against a person "for exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 US 368, 372, 102 S Ct 2485, 73 L Ed 2d 74 (1982).

■ "Selective prosecution" has a different constitutional source but reflects a similar value. Drawing from Equal Protection Clause standards, selective prosecution arises where a defendant demonstrates that others "similarly situated" were treated more favorably and "that the decision whether to prosecute [was] based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *United States v. Armstrong*, 517 US 456, 464, 116 S Ct 1480, 134 L

---

[1] Defendant does not rely on any state source of law for her claims.

Ed 2d 687 (1996) (quoting *Oyler v. Boles*, 368 US 448, 456, 82 S Ct 501, 7 L Ed 2d 446 (1962)). One such "unjustifiable standard" is the prosecution of a particular defendant for having exercised a constitutional right. *United States v. Oaks*, 527 F2d 937, 940 (9th Cir 1975), *cert den* 426 US 952 (1976); *City of Portland v. Bitans*, 100 Or App 297, 302, 786 P2d 222 (1990). Thus, in general, "little substantive difference can be detected between selective prosecution and vindictive prosecution." *United States v. Wilson*, 639 F2d 500, 502 (9th Cir 1981). The crux of both claims here is that the state was motivated to treat defendant more severely than she would have otherwise been treated—and more severely than others were in fact treated—due to her exercise of a constitutional right.[2]

Defendant's claim that the prosecutor charged her out of hostility to her assertion of her Fifth Amendment privilege before the grand jury is best understood against the backdrop of the Supreme Court cases on which she relies. In particular, it is helpful to contrast *North Carolina v. Pearce*, 395 US 711, 89 S Ct 2072, 23 L Ed 2d 656 (1969), and *Blackledge v. Perry*, 417 US 21, 94 S Ct 2098, 40 L Ed 2d 628 (1974), in which the Court determined that the circumstances warranted a presumption of prosecutorial vindictiveness, with *Bordenkircher* and *Goodwin*, in which the Court refused to presume vindictiveness from the circumstances and, moreover, found no actual vindictiveness in fact.

---

[2] The state argues that a vindictive prosecution claim arises only in connection with prosecutorial charging decisions made after an initial charge, such as bringing new or added charges. According to the state, a defendant is limited to a claim of selective prosecution when challenging an initial charging decision. Federal courts appear divided on that proposition. *Compare Wilson*, 639 F2d at 501-02 (doctrine of vindictive prosecution applies only where there has been an increase in the severity of charges; selective prosecution applies to initial prosecution) *with United States v. Napue*, 834 F2d 1311, 1330 (7th Cir 1987) (in appropriate circumstances, mere filing of indictment can form the basis for a vindictive prosecution claim). Nothing in the United States Supreme Court's decisions suggests that vindictive prosecution claims are confined to added or altered charging decisions. To the contrary, two of the Court's vindictive prosecution cases quote and draw from the *Oyler* standard for selective prosecution, thus blending the doctrines. *See Bordenkircher*, 434 US at 364; *accord Goodwin*, 457 US at 372 and 380 n 11. Lower courts appear to have implied the distinction from the factual contexts in which the Supreme Court precedents have arisen, rather than from the logical boundaries of the constitutional principles themselves. In all events, at least in the circumstances presented here, we conclude that there is no substantive difference in the analysis of the two claims. We therefore consider them in tandem.

*Pearce* arose after a judge imposed an increased sentence on a defendant who had successfully obtained a new trial on appeal from his first conviction and, in that sense, involved judicial vindictiveness rather than prosecutorial vindictiveness. The Court held that, in the absence of affirmative reasons based upon objective information justifying an increased sentence, no greater sentence could be imposed after a successful appeal, because the enhanced sentence appeared in that circumstance to be imposed solely due to hostility to defendant's exercise of his right of appeal. *Pearce*, 395 US at 726. In *Blackledge*, the Court extended *Pearce's* presumption of vindictiveness to prosecutorial actions that resulted in increased charges after a new trial. There, the defendant originally was charged and convicted of misdemeanor assault. After he exercised his right to appeal and be tried *de novo* by a superior court, the prosecutor obtained a new indictment charging him with a felony, rather than a misdemeanor, offense. Again, in the absence of a demonstration that the new charge was based on newly discovered information or events, the Court presumed that the prosecutor's actions were retaliatory and were designed to deter defendant's exercise of his statutory right to appeal. *Blackledge*, 417 US at 27-28.

■    *Bordenkircher* and *Goodwin* arose in a pretrial setting, a fact that proved central to the Court's analysis and that led it to an opposite conclusion. In *Bordenkircher*, the prosecutor carried out an explicit threat to file more serious charges against the defendant if the defendant refused to plead guilty to a less serious offense and insisted, instead, on standing trial. Despite the fact that the prosecutor's charge was directly based on the defendant's assertion of his constitutional right to a jury trial, the Court declined to presume that the prosecutor's motive was vindictive. Equally important, the Court was unwilling even to characterize as "vindictive" a prosecutor's desire to induce a defendant to forgo his right to trial by pleading guilty. The Court recognized that, by its toleration and encouragement of plea bargaining, it had "accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." *Bordenkircher*, 434 US at 364. Thus:

"To hold that the prosecutor's desire to induce a guilty plea is an 'unjustifiable standard,' which, like race or religion, may play no part in his charging decision, would contradict the very premises that underlie the concept of plea bargaining itself."

*Id.* at 364-65. The Court emphasized that the concept of vindictiveness requires a retaliatory motive, one in which the "objective is to penalize a person's reliance on his legal rights." *Id.* at 363. Some selectivity in the charging decision is inherent in the broad discretion afforded prosecutors; the constitution is not offended by selectivity *per se* but only by a decision "deliberately based upon an unjustifiable standard." *Id.* at 364.

The Court reached the same result on similar facts in *Goodwin*. There, the defendant was charged with several misdemeanor and petty offenses and was arraigned before a federal magistrate. The case was assigned to a prosecutor who lacked authority to pursue or try felony cases. Defendant initiated plea negotiations but then rejected the government's offer and demanded a jury trial in district court. The case was transferred to a new prosecutor authorized to appear in that forum and who, after reviewing the facts, obtained an indictment charging defendant with a felony offense in addition to several misdemeanor charges.

In rejecting the defendant's claim of prosecutorial vindictiveness, the Court first noted that, unlike in *Bordenkircher*, the defendant in *Goodwin* could not claim "actual" vindictiveness, because nothing in the record suggested that the additional felony charge was brought to influence the defendant's decision whether to plead or go to trial. *Goodwin*, 457 US at 380-81. Nor, as in *Bordenkircher*, was the Court willing to presume a vindictive motive given the pretrial posture of the case. As the Court observed, before trial, a defendant is likely to invoke procedural rights that "inevitably impose some 'burden' on the prosecutor," such as motions to suppress evidence, motions to dismiss the charge, and motions for a jury trial, among others. *Id.* at 381. Given the pretrial procedural maneuvering inherent in the advocacy process, the Court considered it "unrealistic to assume that a prosecutor's probable response to such motions is to

seek to penalize and to deter" rather than to exercise charging discretion in a way that reflects a legitimate assessment of the "extent of the societal interest in prosecution." *Id.* at 381-82. The Court reaffirmed that the constitution is offended only when the exercise of prosecutorial discretion results in "bringing charges *not* in the public interest that could be explained *only* as a penalty imposed on the defendant." *Id.* at 384 (emphasis added).

*Bordenkircher* and *Goodwin* are important to our analysis of this case because, in addition to refusing to extend any presumption of vindictiveness to pretrial charging decisions, the Court in those cases clarified what qualifies as "vindictive" for constitutional purposes. "But for" causation is not the test; the fact that a defendant's assertion of a constitutional right is a precipitating event in a particular charging decision does not make the charge vindictive. *See generally United States v. Gallegos-Curiel*, 681 F2d 1164, 1168-69 (9th Cir 1982) (concluding, based on Supreme Court cases, that the link of vindictiveness cannot be inferred simply because the prosecutor's actions followed the exercise of a right, or because they would not have been taken but for exercise of a defense right; hostility or punitive animus is required); *State v. Nelson*, 166 Or App 189, 203-04, 999 P2d 1161 (2000) (discussing Supreme Court cases and concluding that, in a pretrial setting, vindictive prosecution does not arise when a prosecutor brings charges "in response" to a defendant's exercise of a constitutional right; the prosecutor must act with a retaliatory or punitive motive). Before trial, concerns that legitimately may factor into that normal assessment—such as the burden of going to trial—inherently arise as a result of a defendant's exercise or waiver of constitutional rights or interests. As long as a prosecutor's charging decision is based on the normal assessment of the public interest in the extent of prosecution, and not on hostility to the exercise of the right itself, the fact that the defendant's exercise of a constitutional right precipitates the prosecutor's legitimate interests does not render the prosecution vindictive, illegitimate, or otherwise unconstitutionally selective.

With that understanding of the controlling precedents, we turn to the facts of this case. The evidence is undisputed that the prosecutor intended to bring charges against all employees against whom the state had probable cause to

proceed, whose prostitution-related conduct occurred within the statute of limitations, and who declined to cooperate in prosecuting the organizers of the prostitution operation. The cooperation required by the state involved not just testifying against the organizers of the prostitution ring (and thus waiving any Fifth Amendment privilege) but also testifying candidly and truthfully. To be sure, as defendant argues, the prosecutor's decision to charge defendant was motivated in that sense by defendant's exercise of a constitutional right. But defendant does not contend, nor would the record support, that the prosecutor was hostile to the exercise of the right itself, as opposed to concerned with obtaining defendant's cooperation so that the more culpable offenders could be prosecuted successfully. Thus, the state's characterization of the prosecutor's motive is also accurate—*viz.*, that the prosecutor was exercising leniency as a reward for those who cooperated in the prosecution of the more culpable offenders and was prepared to prosecute all others to the full extent of the law.

■ In that regard, defendant does not argue that a suspect's cooperation or noncooperation is itself an illegitimate consideration in the charging decision. Nor would such an argument detain us. As one court has put it, the cooperation and willingness of some to testify against others " 'is the time-honored manner of such things; use of cooperative witnesses anxious to ease their own paths is an accepted and necessary practice.' " *United States v. Bradley*, 27 MJ 872, 874 (AFMCR 1989), *aff'd in part, rev'd in part* 30 MJ 308 (CMA 1990) (attributing the quotation to counsel). Consistently with that recognition, national standards for the exercise of prosecutorial charging discretion explicitly identify the "cooperation of the accused in the apprehension or conviction of others" as an appropriate consideration in assessing the public interest in whether to pursue a charge in an individual case. *ABA Standards for Criminal Justice* 3-3.9(b)(vi) (2d ed 1980 and 1986 Supp).[3] In the related context of plea

---

[3] As the commentary to the standards explains, a prosecutor "ordinarily should prosecute if, after full investigation, it is found that a crime has been committed, the perpetrator can be identified, and there is sufficient admissible evidence available to support a verdict." *Id.* at 3.55. But that is not to say that all charges supported by probable cause should be pursued. "The breadth of criminal legislation necessarily means that much conduct that falls within its literal terms should not always lead to criminal prosecution." *Id.* at 3.56. A prosecutor "is not neglecting

bargaining, Oregon's statutory scheme specifically authorizes prosecutors to consider a defendant's cooperation in the prosecution of other equally or more serious offenders. *See* ORS 136.514(5). Likewise, the Oregon Supreme Court has rejected a claim, premised on federal Equal Protection Clause principles, that a defendant is entitled to be charged the same as a more cooperative codefendant, reasoning that the codefendant's cooperation renders the two differently situated. *Barber v. Gladden*, 210 Or 46, 63-64, 309 P2d 192 (1957), *cert den* 359 US 948 (1959). The same is true even when the form of the cooperation is the codefendant's willingness to testify before a grand jury. *State v. Clark*, 291 Or 231, 246, 630 P2d 810 (1981), *cert den* 454 US 1084 (1981) (quoting with approval *State v. Clark*, 47 Or App 389, 392, 615 P2d 1043 (1980)). Although those Oregon precedents did not involve vindictive or selective prosecution claims, the federal equal protection analysis that the court followed was analogous in principle, and the court's recognition of the legitimacy of a prosecutor's consideration of a defendant's noncooperation applies equally in this context.[4]

Defendant nevertheless asserts that the prosecutor's charging decision amounts to vindictive and selective prosecution because the form of cooperation required was defendant's waiver of her Fifth Amendment right against self-incrimination. Rather than distinguish this case from *Bordenkircher* and *Goodwin*, however, that fact brings it

---

public duty or discriminating among offenders" by considering mitigating factors in declining to charge or in pursuing lesser charges in a particular defendant's case, but is instead ensuring that "the public interest is best served." *Id.*

[4] Several federal courts have considered vindictive and selective prosecution claims in which the defendants asserted that their cooperation or noncooperation with law enforcement was not a legitimate consideration in the exercise of charging discretion. Those courts appear uniformly to have rejected that argument. *See, e.g., United States v. Sanders*, 211 F3d 711, 720 (2nd Cir 2000) (the prosecution of a defendant who refused to cooperate with the government by revealing confidential news source does not reflect animus or a retaliatory motive); *United States v. Ross*, 719 F2d 615, 620 (2d Cir 1983) ("Where there is probable cause for believing a defendant has committed a crime, his prosecution is not constitutionally barred because the prosecutor's selection of his, out of many other possible crimes to pursue, was precipitated by defendant's failure to cooperate with law enforcement officials."); *United States v. Blackley*, 986 F Supp 616, 620 (DDC 1997) (it is not only permissible but routine to bring more lenient charges or agree to more lenient plea agreements in exchange for cooperation with an ongoing investigation); *United States v. Wingo*, 723 F Supp 798, 802 (ND Ga 1989) (government's motive to reward cooperation does not translate into vindictiveness for noncooperation).

squarely within their rationale. Cooperation with law enforcement efforts can take many forms, some of them involving a waiver of constitutional rights, some not.[5] Just as it is not vindictive for a prosecutor to exercise charging discretion by considering the burden of a trial, even when the burden arises because defendant exercises his constitutional right to a trial, so too it is not vindictive for a prosecutor to consider a defendant's noncooperation in prosecuting other offenders, even when the noncooperation involves assertion of a constitutional right. *See, e.g., United States v. Williams*, 47 F3d 658, 662-64 (4th Cir 1995) (a defendant's cooperation in the form of making undercover drug purchases, testifying against others before the grand jury, and disclosing all known criminal activities is a legitimate concession for a prosecutor to seek in exchange for more lenient treatment).[6] Again, the test is not whether the assertion of a constitutional right was a precipitating event in bringing about a particular charging decision, it is whether the charge "results *solely* from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution." *Goodwin*, 457 US at 380 n 11 (emphasis added). The fact that a prosecutor's legitimate charging concern arises in connection with a defendant's exercise of a constitutional right does not render the charge vindictive or impermissibly selective as long as the prosecutor's decision is a result of that concern, rather than hostility to the exercise of the right itself. Defendant has not satisfied that standard here.

Defendant's final point is that this case is distinguishable from *Bordenkircher* and *Goodwin* because the

---

[5] For example, a defendant's cooperation could take the form of consent to a search, a confession or admission of culpability in a nontestimonial setting, a willingness to talk to police without representation by counsel at a stage at which the right to counsel had attached, and similar waivers of constitutional rights.

[6] Defendant has not cited any authority directly on point that supports her, nor have we identified any. To the contrary, federal cases involving noncooperation in the form of asserting a Fifth Amendment privilege appear uniformly to have rejected her position. *See, e.g., Jarrett v. United States*, 822 F2d 1438, 1443-44 (7th Cir 1987) (defendant was not impermissibly singled out for prosecution based on accomplice's willingness to testify before grand jury and defendant unwillingness to do so); *United States v. Boss*, 652 F2d 36, 38 (10th Cir 1981) (defendant, who was prosecuted after exercising Fifth Amendment right and refusing to cooperate with law enforcement, was not thereby vindictively or selectively prosecuted).

prosecutor did not communicate his willingness to forgo charges if defendant testified candidly and truthfully against the operators in the grand jury proceeding. According to defendant, this case is not like plea bargaining situations, in which a defendant can make an informed choice whether to exercise a particular right. Rather, because the prosecutor declined to advise defendant that she would be treated leniently if she testified, she had to take a calculated risk and waive her Fifth Amendment privilege with only the hope but no assurance that charges against her would not be pursued.[7]

To be sure, the Court in *Bordenkircher* pointed out the "mutuality of advantage" involved in the plea bargaining. 434 US at 363. But the Court did so in response to the defendant's argument that the prosecutor's motives were necessarily vindictive because the plea bargain was designed to induce the defendant to waive his right to trial. The Court recognized that some inducement was inherent in the process of plea bargaining but it was not such as to eliminate a defendant's ability to make a knowing and voluntary choice as to how best to serve his own interests. Thus, just as a plea cannot be deemed "involuntary" because of the pressure that the bargained-for-exchange places on a defendant to forgo a trial, likewise a prosecutor's offer cannot be viewed as illegitimate or vindictive because it is designed to exert such pressure. *See id.* at 363-64.

Our view of the point of that discussion in *Bordenkircher* is reinforced by the Court's holding in *Goodwin*. There, when plea negotiations took place, the government neither contemplated bringing an additional felony charge nor threatened to do so. Negotiations were over by the time

---

[7] Defendant's argument overlooks that there is a mutuality of disadvantage inherent in the situation. By not expressly negotiating for the employees' testimony in exchange for a formal grant of immunity, the prosecutor risked the possibility that none or an insufficient number of the employees would testify against the operators of the prostitution ring, which in the prosecutor's view meant that the state's evidence against them would be inadequate. Alternatively, had the prosecutor made an explicit "deal" with the employees, he risked having the testimony of the employees upon whom his case depended impeached for bias. Those realities underscore the rationale of the Court's holdings in *Bordenkircher* and *Goodwin*—before trial, both the prosecution and the defense are involved in a necessarily self-interested dance of procedural maneuvering designed to further their respective legitimate interests. The constitution simply is not offended when considerations of those kinds prompt a prosecutor's charging decisions.

the case was transferred to a prosecutor authorized to bring such a charge and who, on review of the file, decided to do so. Thus, similarly to this case, the defendant in *Goodwin* did not know that exercising his right to go to trial would precipitate a change of prosecutors that would result in a felony charge. Significantly, no bargaining over that charge occurred. That circumstance, however, did not cause the Court to distinguish *Goodwin* from *Bordenkircher,* except that the Court found the claim of actual coercion more readily to be without merit, because nothing suggested that the additional felony charge was brought to influence the defendant's decision whether to plead or go to trial. *Goodwin,* 457 US at 381. The same is true here. Defendant was not told that, if she cooperated by testifying before the grand jury, she would not be prosecuted. But that fact means only that defendant had to assess her interests in the situation free of any prosecutorial inducement or pressure to waive her Fifth Amendment privilege. Such a circumstance hardly provides a ground for defendant's complaint or objection.

■ In conclusion, we hold that a prosecutor, in exercising pretrial charging discretion, legitimately may consider a defendant's noncooperation in investigating and prosecuting other crimes and other offenders, even when that noncooperation is in the form of assertion of a constitutional right. Such a decision, without more, does not reflect hostility or animus to the exercise of the right, nor is it an impermissible ground of selection. The trial court therefore correctly rejected defendant's claims of vindictive and selective prosecution, and properly denied defendant's motion to dismiss.

Affirmed.